JON M. SANDS
Federal Public Defender
**NANCY J. ARCE**
Assistant Federal Public Defender
Arizona State Bar № 030861
407 W. Congress St., Suite 501
Tucson, Arizona 85701
Telephone: (520) 879-7500
Nancy_Arce@fd.org
*Attorneys for Defendant*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>        Plaintiff, | No. CR23-01120-AMM-BGM |
| vs. | SENTENCING MEMORANDUM |
| Misayel Amore Dicochea,<br><br>        Defendant. | |

Misayel Amore Dicochea, through undersigned counsel, submits this Sentencing Memorandum for the Court's consideration. He moves for a variance and respectfully requests a sentence of 18 months in prison followed by concurrent terms of supervised release.

### Sentencing Memorandum

Among criminal cases involving firearms, Misayel's case is remarkable for all the wrong reasons. The superseding indictment against him goes on for 10 pages listing 69 counts. Superseding Indictment, ECF Doc. 034. The indictment lists firearm, after firearm, after firearm…. *Id.* Misayel's conduct goes back about to July 30, 2020, the earliest firearm purchase, which is documented in count 28. *Id.* Between July 30, 2020, and March 23, 2023, Misayel illegally bought 41 firearms. Presentence Report, ECF Doc. 118 ¶ 17. The July 2020 date coincides with Misayel's memory of when he became involved in the illegal purchase and sale of firearms, when he was 21 years

1

old.

Though Misayel had legally been an adult for three years when he bought the first firearm, he had been trying to support himself and others, since age 16. Age 16 was a critical year for Misayel and is significant in understanding his story and how he ultimately came to be involved in these serious offenses.

### *Misayel's Background*

Misayel never knew his father. He is the oldest of three children, having two younger maternal half-brothers. For the first 10 years of his life, he was raised by his mother, Amy and the father of his middle brother, Nicholas. Amy and Nicholas were in a relationship from the time Misayel was two until age 10. The family struggled financially, resulting in them having to move around a lot. Of his early childhood Misayel recalls, "*I was never at the same school for more than one year.*" He felt the effects of this instability noting that because of the constant moves, he had trouble making friends, and he struggled to keep up with his studies in school.

When Misayel was eight years old, his mother pleaded guilty to Attempted Possession of Marijuana for Sale, a class three felony and was placed on a term of three years' probation in Pima County Superior Court case CR20071783. Selected documents relating to Amy's case are enclosed as Attachment A. Amy struggled while on probation. *See* Attachment A at p. D007. She used cocaine, missed scheduled urinalysis, and she absconded from residential substance abuse treatment. *Id.* On October 5, 2010, after violating the conditions of her term of probation, Amy was sentenced to prison. *See id.* at pp. D007, D010. Misayel was 11 years old. When asked, Misayel recalls his mother was in prison for four years. Records reveal Amy's prison sentence was 2.5 years, *id.* at p. D010, but perhaps to a young boy who was missing his mother those 2.5 years felt more like four.

When Amy went to prison, Misayel and one of his younger brothers went to live with their maternal grandmother, Angelita. It is ironic that now that his mother was in prison, Misayel finally experienced some stability in his young life. Misayel

reports living in the same apartment the entire time he lived with his grandmother. He remained there until about age 14. Misayel's grandfather was not in the picture. Consequently, Angelita worked full-time as a caregiver to provide for Misayel and his brother. For Misayel, this meant that since he was the oldest, he had to step up to help take care of his younger brother. He recalls dropping his brother off at school and picking him up every day. In the evenings, he made dinner or heated up leftovers for the both of them, and he made sure his brother showered and was ready for school the next morning.

At 14 years old, Misayel and his brother went back to live with Amy, who had completed her prison sentence. This time around Amy was a single mother. Misayel remained there until Amy kicked him out of the house at age 16 after he impregnated his girlfriend. Misayel went to live with an older cousin. Misayel then waved goodbye to what was left of his childhood, became a father, dropped out of high school during his sophomore year, and got his first job working at Whataburger, all at age 16.

From there on, Misayel struggled in his new life, unsurprisingly so given his lack of parenteral guidance and the fact that no amount responsibilities could ever transform a child into an adult. He turned to daily marijuana use to help cope with the new stressors in his life. Unwelcomed at home, Misayel bounced around between relatives. When staying with relatives, he always contributed towards rent and household expenses, lest his relatives kicked him out too. He tried living on his own, he succeeded at times, but it was always a struggle. Out of necessity, he developed a good work ethic and maintained steady employment. Unfortunately, as a teenaged high school dropout, the wages at the jobs he could acquire were hardly ideal. To compensate Misayel sometimes worked multiple jobs.

In late 2019, after Misayel and his child's mother ended their relationship, a court ordered him to pay child support. Selected documents from this court case (redacted to comply with Fed. R. Crim. P. 49.1) are enclosed as Attachment B. The court found that Misayel owed $9022.00 in past support (a total which excluded

3

support owed before Misayel reached age 18). Attachment B at p. D013. The court ordered Misayel to pay $408.00 a month for current child support and an additional $30.00 a month for past support. *Id.* at p. D014. After an additional fee, his total monthly child support payment was $443.00. *Id.* The first payment was due on January 1, 2020. *Id.* The Court issued an Income Withholding Orders to Misayel's employers. *See id.* at pp. 10-13.

Misayel was 20 years old and owing more than $9,000.00 was a terrifying and overwhelming reality. But being a "deadbeat dad" was never an option for Misayel especially having grown up without his own father in his life. He always wanted to be an active and present father in his son's life and to support him and every way possible. Misayel did just that, and he continued working hard to provide for himself and his son.

When 2021 came around and Misayel was solicited to illegally buy and sell a firearm, he regrettably accepted. He did not think about the consequences. He was focused on the present and his immediate need for money. One firearm turned into two, two into three, and so on. Selling firearms was by no means a career, Misayel kept working at his regular jobs. The extra money helped him stay afloat and allowed him to help family members from time to time.

### *Age at the Time of the Offenses*

Misayel is 26 years old. He committed these offenses when he was 21 to 23 years old. Though he was an adult, his youth at the time of these offenses deserves significant consideration in determining an appropriate consequence.

Just as having responsibilities does not transform a child into an adult, outside of the legal context, neither does turning 18 or even 21 years old. *See e.g.* Catherine Insel et al., Ctr. for Law, Brain & Behav., Mass. Gen. Hosp., *White Paper on the Science of Late Adolescence: A Guide for Judges, Attorneys, and Policy Makers* (2022). Traits associated with adolescents, including reward seeking behavior, risk-taking, impulsiveness, and susceptibility to peer influence, are also prevalent in

late adolescence (described as ages 18-21). *Id*. As a result, a growing body of research supports the conclusion that cognitive skills and emotional intelligence marking the transition from childhood to adulthood may not fully develop until a person's mid-20's. *See e.g. id.*; American Academy of Pediatrics, APP News: Policy Does Away with Age Limits in Pediatric Care, (last visited Dec. 30, 2025). The American Academy of Pediatrics released guidelines no longer recommending "arbitrary age limits on pediatric health care" and raising the age limit of care from age 21 citing the "growing evidence that brain development does not reach adult levels of functioning until well into the third decade of life." American Academy of Pediatrics, *supra*.

Given this growing body of research and awareness, there has been an increasing number of jurisdictions contemplating raising the upper age of juvenile jurisdiction and/or adopting changes to how 18- to 25-year-olds are treated in the criminal justice system. For example, in Massachusetts there is a campaign to raise the age of adult criminal jurisdiction to 21 years, acknowledging that "exposure to toxic environments, like adult jails and prisons, entrenches young adults in problematic behaviors, increasing the probability of recidivism." *See* Citizens for Juvenile Justice, *Emerging Adult Justice Reform*, https://www.cfjj.org/emerging-adult-justice (last visited Dec. 30, 2025). San Francisco County established a Young Adult Court in 2015 specifically for individuals aged 18 to 24 years in recognition of the fundamental differences between this group, juveniles, and older adults. Superior Court of California County of San Francisco, Young Adult Court, https://sf.courts.ca.gov/divisions/collaborative-courts/young-adult-court (last visited Dec. 30, 2025).

It should be considered that while development makes an emerging adult more vulnerable and less culpable of criminal behavior, it also makes them more malleable and amenable to positive influence, intervention, and rehabilitation. Citizens for Juvenile Justice, *supra*.

### *Reflection & Rehabilitation*

Misayel understands that he committed incredibly serious offenses. While it

was previously convenient for him to ignore the gravity of his actions, it is now impossible. He will pay for the consequences of his actions, both literally and figuratively, for the foreseeable future. As expressed in his letter to the Court, Misayel is remorseful for his actions writing, "*I am sorry for the problems I caused. I was selfish, irresponsible and wreckless [sic]. I take full responsibility for the acts I have done.*"

Now in his mid-20s, Misayel is maturing. He is beginning to truly understand and appreciate what it means to be an adult. He is learning what matters to him the most and that despite circumstances that may be out of his control, he is ultimately the one who determines his future. He recognizes that his impulsiveness, shortsightedness, and poor decision-making have cost him valuable time with the most important person in his life, his son. The concern he expresses in this letter to the Court regarding his potentially diminishing relationship with his son demonstrates where his heart is and where his priorities lie.

> *I want to be in my son's life an [sic] be the best father I can be. Being away from him all this time makes me feel like I am losing my bond with him, I still talk to him all the time over phone calls and video visits but I feel like our conversations are shorter and shorter everyday [sic]. I need to get out an [sic] make it up to him get my life in order for him, show him that I care and that he is the most important person in my life an [sic] I need him.*

It is clear that above all else, Misayel values his family. This sentiment can also be seen in the way Misayel expresses his grief over his strained relationship with his mother and over the painful loss of his grandmother. Losing his grandmother is clearly one of the experiences that has helped Misayel gain perspective. Life is precious. His life and his time are valuable, and he wants to spend as much time as possible with the people he loves. Resorting to crime will never solve his problems and in the end, it will only harm him and the people he loves.

Misayel also recognizes that he turned to drugs to deal with stress and to get through tough times. He understands his drug use is problematic and counter intuitive.

Before absconding from release, he successfully completed residential substance use treatment at Community Bridges, Inc. He looks forward to completing outpatient treatment and believes treatment will be beneficial and necessary to help prevent a relapse.

Misayel knows that he must pay the consequences for his actions. He understands that the road ahead will be tough. Because of his actions he is in prison and will owe more money now than he ever has in the past. He has had a lot of time to think about his future and how to best move forward. Though in the short term, Misayel can work at his uncle's landscaping business, he knows that he needs to do more to succeed and pay his debts. He plans on obtaining his GED and getting a commercial driver's license to advance into more lucrative jobs that have the potential to turn into a career for him.

### *Conclusion*

It is respectfully requested that the Cout consider Misayel's history and characteristics, particularly his childhood and age at the time of the offense, as well as the circumstances leading up to the offense, grant a variance, and impose a sentence of 18 months in prison followed by concurrent terms of supervised release. This sentence sufficiently fulfills the purposes set for in 18 U.S.C. § 3553(a). Misayel also respectfully asks this Court to recommend that he complete the remainder of any custodial sentence in a facility in southern Arizona to facilitate family visitation lest his familial relationships continue to erode.

**RESPECTFULLY SUBMITTED:**   December 30, 2025

JON M. SANDS
Federal Public Defender

 */s/ Nancy J. Arce*
**NANCY J. ARCE**
Assistant Federal Public Defender

7